IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 04-31214-H2-7 |
| JAMES LEWELLYN MILLER, II | § | |

**MEMORANDUM OPINION, FINDINGS, AND CONCLUSIONS
REGARDING SEPARATE WRITTEN ORDER
GRANTING MOTION TO RECONSIDER (doc # 21)
<u>AND, AFTER RECONSIDERATION, AFFIRMING ORDER REOPENING CASE</u>
(doc # 18)**

Merck & Co., Inc. ("Merck") seeks to deny Kenneth Havis (the chapter 7 "Trustee") the ability to reopen this bankruptcy case to prosecute a lawsuit against Merck. Technically, Merck's motion is a motion to reconsider the Court's order allowing the Trustee to reopen the case. Technically, the Court has granted that motion because the Court has reconsidered its decision. The ultimate relief that Merck seeks, however, is for the Court to vacate its order allowing the Trustee to reopen the case. No hearing is necessary because there are no disputed issues of fact, and the Court can rule as a matter of law from the motion, response, and respective memoranda of authorities. After reading Merck's motion and after reading the competing memoranda of authorities, the Court concludes that the decision to allow the Trustee to reopen the case was correct. Therefore, although technically Merck's motion is granted, *i.e.* the Court has reconsidered its decision, the ultimate relief that Merck seeks (to deny the Trustee the ability to reopen this case to administer undisclosed assets) is denied. A separate order has been issued this date.

UNCONTESTED FACTS

The following facts are either asserted by both parties in their pleadings and memoranda or are asserted by one party, not disputed by the other, and are taken (for purposes of this decision only) as established fact.

On February 4, 2003, James Miller II ("Debtor") had a heart attack. He filed a chapter 7 bankruptcy petition in 2004. Prior to filing this bankruptcy case, Debtor had investigated the possibility of filing suit against Merck because Debtor had taken Vioxx, a drug manufactured by Merck, which allegedly increases the risk of heart attack in some patients.

Debtors must provide extensive information when they file bankruptcy cases, including data required by an official form ("Bankruptcy Schedules"). The Bankruptcy Schedules require debtors to

list all claims that they may have against other entities. Debtor did not list any claim against Merck in his Bankruptcy Schedules.

The Trustee examined the Debtor at the § 341 creditors' meeting concerning Debtor's assets and debts, and the Trustee issued a "no asset" report. In this era of electronic filing, a "no asset report" is a docket entry initiated by the Trustee. In this case the Trustee caused the following docket entry to be made:

> Trustee's Report of No Distribution: Trustee of this estate reports and certifies that the trustee has performed the duties required of a trustee under 11 U.S.C. 704. Debtor has appeared at the First Meeting of Creditors and the meeting was concluded. The trustee has determined that there are no assets to administer for the benefit of creditors of this estate. I have received no funds or property of the estate, and paid no monies on account of the estate. Wherefore, the trustee prays that this report be approved and the trustee be discharged from office. Debtor/Debtor's counsel notified. (Havis, Kenneth)(Entered: 03/03/2004 09:53 AM)

Merck concedes that the Trustee examined Debtor based on the Bankruptcy Schedules, which did not disclose a claim against Merck. Merck concedes that the Trustee's statement (that there were no assets to administer) was based on the schedules that did not disclose a claim against Merck.[1] There is no allegation in Merck's motion that the Trustee had any information suggesting that Debtor had a claim against Merck.

About one year later, March 2005, Debtor filed suit against Merck. The Trustee discovered the suit, and the Trustee filed a motion to withdraw the "no asset" report and to reopen the case to allow the Trustee to pursue the newly discovered claim against Merck. The Court granted that motion.

---

[1] Paragraphs 7 and 8 of Merck's motion state:

> On the Petition Date, along with his voluntary petition, the Debtor filed his schedules of assets and liabilities and statement of financial affairs. Despite Schedule B's requirement that debtor identify contingent and unliquidated claims of every nature, Mr. Miller affirmatively indicated that he had no such claims. <u>Based upon those sworn schedules</u>, on March 3, 2004, the Trustee filed a Report of No Distribution (the "Report"). [Emphasis supplied.]

About a week later, Debtor filed amended Bankruptcy Schedules disclosing an alleged claim against Merck.

A few days later, Merck filed the motion to reconsider the Court's order reopening this bankruptcy case, which is the instant contested matter.

## ANALYSIS

### Summary

First, Merck is not a party in interest in this bankruptcy case. Therefore, Merck has no standing to object to the administration of this bankruptcy estate. Second, the Court rejects Merck's contention that the Trustee is judicially estopped from reopening this case by Debtor's statements in the Bankruptcy Schedules; the Trustee and Debtor are different entities. Finally, Merck's objection to the Trustee's reopening this case confuses (i) administration of this estate with (ii) assertion of claims in the state court lawsuit. Whether or not the Trustee is estopped from asserting the claim against Merck, the Trustee is not estopped from reopening this case to address administration of assets that were not previously administered.

### Merck is not a Party in Interest in this Bankruptcy Case and has no Standing with Respect to Case Administration

The issue in this contested matter is whether the Trustee may reopen this case. The viability of the Trustee's claim against Merck is not the issue. Merck does not assert that it is a creditor of this estate and makes no claim to any right to a distribution from this estate. Merck cites no right that it has, or interest it asserts, under the Bankruptcy Code relating to administration of this case. Merck did not participate in the case in any way prior to the date that the case was closed.

Merck correctly states in its reply memorandum:

> Section 1109(b) contains a non-exclusive list of examples of what persons or entities may be considered to be a party in interest, which list includes the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder or any indenture trustee.

The Court acknowledges that the list is non-exclusive. But the Court sees no entity in that list that is in any way similar to Merck. Merck's only relationship to this case is that the Trustee asserts that Merck should pay money to the estate.

Merck cites *In re Am. Appliance*, 272 B.R. 587 (Bankr. D.N.J. 2002), but that case involves a debtor lessee that was attempting to assume and to assign the lease to a creditor. Lease assumption in bankruptcy involves specific rights for the lessor under Bankruptcy Code § 365. The court specifically found that the lessor had standing to assert his rights under Bankruptcy Code § 365.

Merck also cites *In re Public Service Co. of New Hampshire*, 88 B.R. 546 (Bankr. D.N.H. 1988). That case involved a regulated public utility. The Bankruptcy Code provides special rights in chapter 11 cases to regulatory agencies and the regulatory process.[2] In that case, the court recognized that the State of New Hampshire (which had regulatory authority over Debtor), a consumer advocate appointed by statute in New Hampshire, and industry associations that appeared before the New Hampshire Public Utility Commission were parties in interest. Like the lessor in *Am. Appliance*, those parties were litigating rights explicitly articulated in the Bankruptcy Code.

In its reply memorandum, Merck asserts that it is a party in interest because it is a defendant in a lawsuit that the Trustee is seeking to bring. The Court understands that Merck is a party to a state court lawsuit. Merck has cited no authority that being a defendant in a lawsuit brought by the Trustee, without more, makes Merck a party in interest that has a right to be heard on bankruptcy case administration. Estates are administered for the benefit of creditors and the debtor(s), not for the benefit of entities who may owe money to the estate.

Merck also argues that it has constitutional due process rights to be heard as a party in interest. The Court agrees that Merck has due process rights in the lawsuit in which it is sued. But since Merck has no right to distribution from the estate and no bankruptcy rights to protect, Merck has no right to complain about how the estate is administered.

In *Giddens, M.D. v. Kreutzer (In re Kreutzer)*, 2006 WL 1666187 (N.D. Okla. 2006), the court held that a defendant in a claim brought by the trustee had no standing to challenge the debtor's motion to reopen the case because the defendant was not the debtor, the trustee, or a creditor and had no direct interest in the proceeding.

Giving Merck a voice in whether the chapter 7 trustee can sue Merck is a very strange idea, a little like putting the fox in charge of the hen house. The Court sees no authority for that in the Bankruptcy Code. Merck is not a party in interest merely on showing that the Trustee will sue Merck.

<u>The Trustee Did Not Abandon the Claim Against Merck; Any Undisclosed Claim  Remained Property of the Estate</u>

---

[2] Bankruptcy Code § 1129(a)(6).

Bankruptcy Code § 541 is an expansive definition of property that becomes "property of the estate" when a debtor files a bankruptcy case. In effect, any property right in which debtor had an interest when the bankruptcy case was filed becomes property of the estate. "Property of the estate" includes "... all legal or equitable interests of the debtor in property as of the commencement of the case." A debtor's "claims" against nondebtor entities become property of the estate when the bankruptcy petition is filed.[3] There is no requirement that the property be listed in the debtor's Bankruptcy Schedules; the property becomes property of the estate merely because the debtor had the property right on the date that the bankruptcy case was filed. That property remains property of the estate unless the bankruptcy court authorizes sale or other disposition of the property. If the property has no value, the trustee may abandon the property.

> Bankruptcy Code § 554 states:
> (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate...
> (c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.
> (d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

Reading subsection (c) and subsection (d) together, it is clear that an asset that is not listed in a debtor's schedules or otherwise disclosed and administered remains property of the estate. It is not abandoned when the case is closed. There is a statutorily explicit distinction between cases in which property is not listed in the Bankruptcy Schedules but is disclosed and administered (as in the *Superior Crewboats* case discussed below) and the instant case in which property was not disclosed and was not administered.

It is not serendipitous that the Bankruptcy Code has an explicit provision that prevents the loss of assets that a debtor fails to disclose in Bankruptcy Schedules. It happens all the time, especially with claims. And when it does, cases are routinely reopened, in accordance with the statute, to administer those assets.[4] It would be truly unjust, and a source of endless mischief, if a debtor could deny to the

---

[3] COLLIER ON BANKRUPTCY ¶541.08 (Matthew Bender & Co. 15th Ed. Rev.).

[4] COLLIER ON BANKRUPTCY ¶554.03 (Matthew Bender & Co. 15th Ed. Rev.); *In re Lehosit*, 2006 Bankr. Lexis 1263 (Bankr. N.D.W.Va. 2006) (holding that an undisclosed cause of action,

trustee the right to pursue assets merely by failing to list the assets in Bankruptcy Schedules.

Judicial Estoppel

Merck argues that Debtor's failure to list the claim against Merck in his bankruptcy case judicially estops the Trustee from reopening this case.

The Court will use the definition of judicial estoppel that Merck used in its memorandum:

> [A] party who assumes one position in its pleadings is estopped from asserting a contrary position in a subsequent proceeding if: (1) the position of the party to be estopped is clearly inconsistent with its previous one; (2) the party convinced the court in the previous proceeding to accept its position; and (3) the party asserted the prior position intentionally rather than inadvertently.

*The Trustee Did not Take a "Contrary Position"*

It is not clear what "contrary position" Merck asserts as the operative "contrary position" that might judicially estop the Trustee. Possibly Merck contends that Debtor's failure to list the claim against Merck is a "contrary position." If that is Merk's contention, then judicial estoppel might apply to Debtor. But the party seeking to reopen this bankruptcy case is the Trustee, and the Trustee did not make the statement about which Merck complains. The Trustee did not file the schedules. The Trustee is not judicially estopped from reopening this case by a "contrary position" by the Debtor. In short, the Court cannot see any "contrary position" that the Trustee may have taken.[5]

---

which existed at the time of filing, remained an asset of the estate and allowing the debtor to reopen the case to formally schedule the cause of action); *In re Hamlett*, 304 B.R. 737 (Bankr. M.D.N.C. 2003) (where the debtors held a cause of action at the time of filing, did not disclose that cause of action in debtors' schedules, pursued the cause of action post-discharge, and met allegations of judicial estoppel in that action, the bankruptcy court allowed the debtors to reopen debtors' chapter 7 proceedings to schedule the cause of action and called for the appointment of a trustee to administer the reopened estate); *Lopez v. Specialty Restaurants Corp. (In re Lopez)*, 283 B.R. 22 (B.A.P. 9th Cir. 2002) (held that a debtor's bad faith is not sufficient ground to deny the reopening of a case when a debtor seeks to reopen a case to schedule a previously undisclosed claim that might benefit creditors of the estate and that the court below abused its discretion in denying the motion to reopen the case).

[5] Possibly Merck contends that the Trustee's no asset report was a "contrary position." But that contention would be unavailing since Merck acknowledges that Trustee did not know about the

*The Court Did not "Accept" Any Contrary Position*

      Merck's principal authority for the proposition that the court "accepted" the debtor's position is *Superior Crewboats, Inc. v. Primary P&I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330 (5th Cir. 2004).  That case, however, is clearly distinguishable.  First, and most important, *Superior Crewboats* deals with dismissal of a district court lawsuit brought by a former bankruptcy debtor.  *Superior Crewboats* does not deal with a trustee's right to reopen a bankruptcy case.  Second, *Superior Crewboats* invokes judicial estoppel against the debtor, not against the trustee.  Third, in *Superior Crewboats*, the debtor made affirmative representations to the trustee that the lawsuit had no value and convinced the trustee to abandon the cause of action by falsely telling the trustee and the creditors (at the 341 creditors meeting) that the cause was prescribed.  *Id.* at 333.  On the debtor's affirmative representation, the trustee abandoned the cause of action and the court issued a "no asset" discharge.[6]  In the case at bar, the asset was never disclosed, there was no affirmative misrepresentation, the trustee did not abandon the asset, and neither the trustee nor the court "accepted" Debtor's misrepresentation.

      Many of the cases cited by Merck involve chapter 11 or chapter 13 debtors.[7]  Cases under chapter 11 and chapter 13 are distinguishable from cases under chapter 7 for two reasons.  First, in chapter 11 cases, debtors file disclosure statements and schedules on which creditors and the court rely to confirm plans of reorganization.  In chapter 13 cases, debtors file schedules on which the chapter 13 trustee and the court rely to confirm chapter 13 plans.  In those chapters, the discharge occurs only if the plan is confirmed; therefore, false statements in the schedules or disclosure statement are effectively "accepted" by the Court.  The Court does not review or rely on the schedules in chapter 7 cases to determine whether to grant a discharge.  Second, in the chapter 11 and chapter 13 cases, the person who made the misrepresentation is the debtor and the debtor is the person seeking further relief for his or her own benefit.  In the case at bar, the person seeking to reopen the bankruptcy case is the Trustee

---

lawsuit when the no asset report was issued.  That issue is discussed below in the section devoted to whether the Trustee <u>intentionally</u> took a "contrary position.

    [6]  "Shortly after the creditors' meeting, the bankruptcy trustee filed a Petition of Disclaimer and Abandonment concerning the lawsuit. On October 1, 2001, the bankruptcy court granted the Hudspeaths a "no asset" discharge."  *Superior Crewboats* at 333.

    [7]  *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282 (11th Cir. 2002), *Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555 (9th Cir. 1992), *Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.,* 989 F.2d 570 (1st Cir. 1993), *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3rd Cir. 1988).

who represents creditors.[8]

The other cases that Merck cites are either distinguishable or not persuasive. In *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197 (5th Cir. 1999), the court accepted the debtor's position by granting the debtor's largest unsecured creditor's motion to lift stay, pursuant to a stipulation (between the debtor and that creditor) as to the value of the debtor's assets.[9] *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001)[10] is a lawsuit brought by the debtor not by a trustee. In addition, it is a lawsuit against an insurance company, not a motion to reopen a bankruptcy case. The same applies to *Estel v. Bigelow Mgmt, Inc.*, 323 B.R. 918 (E.D.Tex. 2005).

In the case at bar, the Court never knew about, or made a ruling based on, Debtor's failure to disclose the claim against Merck.

*Any Relationship of the Trustee to a "Contrary Position" Could Not Have Been Intentional Because Trustee was Not Aware of the Claim Against Merck*

If Merck contends that the Trustee's "no asset report" was the "contrary position," then judicial estoppel does not apply because Merck admits that the Trustee did not know about the claim when the Trustee issued the "no asset" report. If the Trustee did not know the facts, he could not have intentionally asserted the allegedly contrary position. And, by explicit statutory provision, the Trustee's ignorance of the claim precluded abandonment of the assets.

---

[8] In *Biesek v. Soo Line Railroad Co.*, 440 F.3d 410 (7th Cir. 2006), the Court of Appeals for the Seventh Circuit stressed that applying judicial estoppel against a trustee would injure important third parties, the creditors. *Id.* at 413. The Court of Appeals for the Seventh Circuit stated that if courts, like *Superior*, were concerned with punishing the debtor, they should revoke the debtor's discharge and report the debtor to the United States Attorney. *Id.* Finally, the Court of Appeals for the Seventh Circuit found that applying judicial estoppel was not logical because the debtor did not own the cause of action, making the debtor an ineligible party in the lawsuit, and making it impossible for the debtor to have taken inconsistent positions. *Id. See also Giddens, M.D. v. Kreutzer (In re Kreutzer)*, 2006 WL 1666187, 5 (N.D. Okla. 2006).

[9] The case was filed under chapter 11 and was only converted to a chapter 7 after the creditor bought the assets in the foreclosure and turned them over to a new company, which had retained all of the debtor's former employees. *Id.*

[10] It is worth noting that the debtor in *Hamilton* was asked specifically about insurance coverage for a loss multiple times and ignored the inquiries. *Id.* The debtor's discharge was eventually revoked and his bankruptcy dismissed for such behavior. *Id.*

*Summary*

Very simply, the Trustee did not intentionally assert a position contrary to the assertion of a claim against Merck in the lawsuit. The Trustee is the movant here. The Trustee is not judicially estopped.

<u>*In Re Walker*, and the Distinction Between Trustee and Debtor</u>

Merck cites *In re Walker*, 323 B.R. 188 (Bankr. S.D. Tex. 2005). *Walker* is distinguishable because in *Walker* it was the debtor who was seeking to reopen the case, not the trustee. Judge Bohm was obviously troubled by the fact that the trustee, who represents the creditors, apparently had no interest in the case and was not going to represent creditors in asserting the cause of action. Therefore, the only party to benefit was the debtor, who was (under those facts) judicially estopped.

The court in *Walker* hypothesized a different result if the trustee were seeking to recover an asset, such as a certificate of deposit, which the trustee were likely to obtain and to distribute according to the priorities of the Bankruptcy Code. The *Walker* court stressed that it was concerned with the possibility that the trustee would abandon the claim, leaving the debtor to reap the benefits of the litigation, to the exclusion of the estate's creditors. *Walker*, 323 B.R. at 198-199. The court was concerned that such a result would encourage debtors to hide claims. However, the court stated that it would not preclude a trustee from reopening a case, where it was unlikely that the trustee would abandon the proceeding. *Id.* at 199, note 11.[11] In the case at bar, the Trustee has already begun to pursue the claim, providing ample evidence that the chances of the Trustee abandoning the claim are remote.

Merck asserts (in its response to the Trustee's memorandum) that *Walker* applies because the distinction between Debtor and the Trustee is a distinction without a difference. But there is a vast difference between a trustee in a chapter 7 case and a debtor in a chapter 7 case. The trustee acts as representative of creditors. The debtor represents no one but himself.

<u>"Cause" is Not Necessary to Reopen the Estate to Administer Assets</u>

Merck provided extensive briefing about whether there is "cause" to reopen the estate, and whether the Court should have held a hearing on whether to reopen the estate. Emphasis on "cause" is

---

[11] The court asserted that there would be sound argument for opening a case where the undisclosed asset was easily liquidated because there would be only a remote chance that the trustee would abandon the claim. *Id.* The same logic applies where, as here, the trustee has made previous steps in pursuit of the claim.

a red herring. The Court did not reopen the estate for "cause." As demonstrated above, there was an undisclosed asset of the estate (a claim against Merck), that asset was not administered or abandoned by the trustee, and the claim therefore remains property of the estate. Bankruptcy Code § 350(b) provides that the case may be reopened to administer assets. Reopening a case to administer assets is a statutorily explicit reason to reopen a case; it is not the "other cause" that Merck discusses at length. The statute does not require notice and a hearing to reopen a case to administer an asset. The statute simply authorizes the Court to reopen the case.

Merck's Contention that Debtor Cannot Be Allowed to Benefit

Merck argues that distinguishing the Trustee from Debtor is a distinction without a difference because Debtor will benefit from reopening the bankruptcy case. Merck notes that all assets not needed to pay creditors and administrative claims will be distributed to Debtor.[12]

The Court notes a number of problems with that analysis. First, judicial estoppel does not involve an analysis of relative or potential harms and benefits. Judicial estoppel is intended to protect the integrity of the judicial process, and it relates only to contrary positions asserted by a party. As the Seventh Circuit ruled in *Biesek, supra in footnote 8,* the trustee and the debtor are separate entities with separate interests with respect to whom application of judicial estoppel has limits.

Finally, for one last time, the Court emphasizes that this decision does not adjudicate the merits of a claim against Merck or determine whether the Trustee is judicially estopped in his suit against Merck. It merely allows the Trustee to reopen a bankruptcy case to administer an asset that was previously not administered or abandoned. Merck will no doubt assert, as a defense to the Trustee's lawsuit, that the Trustee is judicially estopped from asserting a claim against Merck. But that issue can be adjudicated when the Trustee's claim is asserted, not when the case is reopened for administration of unadministered assets.

---

[12] The Court notes that this allegation puts Merck in a strange position. The only way that Debtor could benefit is if the lawsuit has merit. Presumably Merck is contending, in state court, that the lawsuit has no merit. The Court wonders whether, if Merck is successful in avoid the reopening of this bankruptcy case, whether Merck will be judicially estopped from asserting in state court that the lawsuit has no merit.

CONCLUSION

   The Bankruptcy code authorizes the Court to reopen a case to administer assets. The Court has exercised that authority properly. The Court will not vacate the order, docket # 18.

SIGNED  August 7, 2006

*Wesley W. Steen*

_____

WESLEY W. STEEN
UNITED STATES BANKRUPTCY JUDGE